DIESEL TANKER F. A. VERDON, Inc., v.
THE ALL AMERICAN et al.

THE F. A. VERDON.

THE ALL AMERICAN.

TEXAS CO. v. THE F. A. VERDON et al.

THE MAGNOLIA.

No. 237.

Circuit Court of Appeals, Second Circuit.

April 11, 1942.

Pyne & Lynch and Anthony V. Lynch, Jr., all of New York City, for Texas Co.

Foley & Martin, James A. Martin and Christopher E. Heckman, all of New York City, for Diesel Tanker F. A. Verdon, Inc.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a libel by the owner of Diesel Tanker F. A. Verdon against the tug All American to recover damages arising from a collision that resulted in injury to the tanker and her cargo. The collision occurred on the New Jersey side of Kill Van Kull between the north shore of Staten Island and the southerly shore of Constable Hook. The Texas Company, owner of the barge Magnolia, filed a cross-libel against the Verdon to recover damages to the barge which were caused by the collision between the Verdon and the barge. The District Court granted the owner of the Verdon an interlocutory decree against the All American and dismissed on the merits the cross-libel of the Texas Company. We think the Verdon and the All American were both at fault and that the damages should have been divided.

The trial court found that the Verdon left the Standard Oil Pier at Constable Hook on the Bayonne side of the Kill en route for New Haven, Connecticut, and, while proceeding through the Kill, and at a point west of Buoy 2A, observed the All American showing a green light and in a position safely to pass the Verdon starboard to starboard. The court also found that when the Verdon observed the All American the latter was on the south side of the channel near the Staten Island shore and the Verdon was also on the south side but far enough from the shore for the vessels to pass safely, starboard to starboard. Thereupon the Verdon gave a two-whistle signal, indicating a starboard to starboard passage, to which the All American answered with a single blast. The Verdon then sounded a danger signal and a moment after repeated her two-whistle signal, to which the All American

replied with two blasts. At the time that the All American sounded the danger signal both her red and green lights were visible. Thereafter the Verdon continued on at six miles per hour, but did not reverse her engines for the reason, as her master said and the court found, that backing in the ebb tide would have swung her bow further to starboard and carried her across the bow of the All American. Instead she hauled to port so as to head away from the All American, and then swung back to starboard to get straight and run parallel with the All American in order to avoid collision, or, failing that, to lessen an impact by making the blow a glancing one. As a result the All American continued on toward the Verdon and brought her barge Magnolia into collision with the Verdon's starboard side about 70 feet from the latter's bow. The court made a finding that the collision was about 300 or 400 feet westward of Buoy 2A, slightly on the north side of the middle of the Kill Van Kull channel. The All American was found not to have been making sternway at the time. She had been encountering a northwest wind of about 30 miles per hour that blew against the barge Magnolia which stood about 12 feet above the surface of the water. When the navigator of the Verdon sighted the All American the latter's course was so close to the Staten Island side of the channel that he believed she was bound for a Staten Island pier.

The All American was held solely at fault, (1) for sounding a one-whistle signal, (2) for failing to hear the Verdon's two whistles or, if she heard them, for replying with a single whistle, and (3) for having a lookout who neglected to report the lights of the Verdon or her two-whistle signal to the navigator of the All American.

The testimony for the All American was to the effect that the Verdon first sounded a one-whistle, and not a two-whistle signal, that it was answered by one whistle from All American and that the approaching vessels were then in a position to pass port to port. But the Verdon, though then only about 200 or 300 feet off the Staten Island shore, was said to have blown an alarm, followed it by another single whistle, swung to port at an angle of about 90° and into collision with the Magnolia. According to the testimony of All American the collision occurred eastward instead of westward of Buoy 2A and only about 200 feet from the New Jersey pier ends. It is no wonder that the District Judge was unwilling to credit this story of a sudden 90° sheer to port on the part of the Verdon.

But according to the testimony and findings the collision occurred on the *north* side of the channel. Therefore at best the Verdon had the burden of explaining her violation of the narrow channel rule and showing that it did not contribute to the accident. We think that the testimony of Engwall, the second mate of the Verdon who was in charge of her navigation, showed the reason for the failure to keep on her own side of the channel, for he admitted that he thought the All American was bound for the Staten Island docks when he saw her green light. He said that when he first saw her she was about a quarter of a point off the starboard bow of the Verdon and pretty nearly head and head with the latter and later was from a *point to a point and a half off.* As a matter of fact, the green light of All American, as she came along the shore of Constable Hook at an angle with the upper course of the Kill, was bound to be visible to the Verdon. Her navigator made the erroneous assumption at that time that All American would continue going up the channel at the same angle she was then holding instead of porting in order to keep on the starboard side of the stream as she must have done if the court was correct in finding that she was near the Staten Island docks when first seen. Likewise the Verdon must have gone far over to port if the finding is accepted that she changed from a position 200 to 300 feet off the docks to a position when the collision occurred that was north of the center of the Kill. Apparently the witnesses for both sides exaggerated the positions of their vessels. It seems evident that the Verdon was farther to the north than her witnesses indicated and similarly that All American was farther to the south than her proofs showed. In our opinion the disregard of the narrow channel rule was the chief cause of the trouble. By disregarding that rule each vessel crowded the other. We see no reason other than the mistake about the destination of All American for the Verdon's original signal for a starboard to starboard passage or for her continued insistence upon it after

All American had given a contrary signal. Moreover, we think the Verdon was not justified in proceeding at full speed in the face of imminent danger and when she heard the All American's answer of one blast she should have acceded to it and have gone to starboard, or in any event have reversed and backed, instead of repeating her old signal of two blasts and forging ahead. Indeed she seems to us more clearly in fault than All American. Nevertheless in view of the findings which indicate that All American was from the beginning out of position in the channel we cannot regard her as free from contributory fault and therefore hold both vessels to blame and direct that the damages should be divided accordingly.

The interlocutory decree upon the libel by the owner of the Verdon is modified so as to allow half damages to the libellant and the decree dismissing the cross-libel is reversed with directions to grant an interlocutory decree to the Texas Company for half the damages suffered by the Magnolia.

Interlocutory decrees granted to libellant and cross-libellant for half damages.